Source: My Sources > Federal Legal - U.S. > Combined Federal Court Cases > 4th Circuit - US Court of Appeals, District & Bankruptcy Cases, Combined ⓘ
Terms: **retaliat! w/s months w/p lapse w/s time** (Edit Search)

⌖ Select for FOCUS™ or Delivery

☐

*2001 U.S. Dist. LEXIS 7080, \**

STEVEN M. VANDEVANDER v. ST. MARY'S COUNTY SHERIFF'S OFFICE, et al.

CIVIL NO. CCB-99-1911

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

2001 U.S. Dist. LEXIS 7080

May 30, 2001, Decided

**DISPOSITION:** [*1] Defendant's motion for summary judgment granted.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff deputy sheriff sued defendant sheriff in his individual and official capacities, alleging sexual harassment and retaliation in employment in violation of Title VII of the Civil Rights Act of 1964. Defendant moved for summary judgment.

**OVERVIEW:** Plaintiff, a male, alleged that a female coworker propositioned him for sex on two occasions, and created a hostile work environment after he refused her advances. The court dismissed that claim, as plaintiff produced no evidence that the coworker had the authority to affect the terms of his employment in any way. Without such a showing, the two "propositions" in question were not sufficiently egregious conduct to constitute a hostile work environment. The court also dismissed the retaliation claim, as plaintiff did not establish a prima facie case. Of the several alleged retaliatory actions, one - defendant's enhancement of a trial board's recommended penalty on a charge plaintiff had used excessive force from suspension to termination - clearly affected the terms, conditions, or benefits of plaintiff's employment. However, plaintiff did not show a causal connection between protected activity and the adverse employment action. A period of nearly five **months** between the time defendant became aware of the protected activity and the employment action was too long to support a finding that defendant terminated plaintiff in **retaliation** for his protected activity.

**OUTCOME:** The court granted defendant's motion for summary judgment. Plaintiff did not show a hostile work environment under Title VII when a female employee propositioned him twice, but had no authority to affect his employment terms. A causal connection for plaintiff's retaliation claim was not shown, as the **time lapse** was too long.

**CORE TERMS:** grievance, retaliation, summary judgment, protected activity, supervisor, overtime, harassment, termination, informal, excessive force, memorandum, deputy, score, sexual harassment, hostile work environment, retaliatory, assigned, mailbox, causal connection, prima facie case, adverse action, first class, reassignment, interviewed, terminated, hostile, signing, lawsuit, arrest, duty

**LexisNexis (TM) HEADNOTES - Core Concepts -** ♦ Hide Concepts

📄 Civil Procedure > Summary Judgment > Summary Judgment Standard
HN1⬇ See Fed. R. Civ. P. 56(c).

📄 Civil Procedure > Summary Judgment > Summary Judgment Standard
HN2⬇ For purposes of summary judgment, a genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. In making this determination, the evidence of the party opposing summary judgment is to be believed, and all justifiable inferences drawn in her favor. The non-moving party may not rest upon mere allegations or denials in her pleading, however, but must set forth specific facts showing that there is a genuine issue for trial. The mere existence of a scintilla of evidence in support of the plaintiff's position is not enough to defeat a defendant's summary judgment motion.

📄 Labor & Employment Law > Discrimination > Sexual Harassment > Hostile Work Environment
HN3⬇ Title VII of the Civil Rights Act of 1964 (Title VII) precludes an employer from discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex. 42 U.S.C.S. § 2000e-2(a)(1). Because the workplace environment is one of the terms, conditions, or privileges of employment, Title VII creates a cause of action in favor of persons forced to work in a hostile workplace.

📄 Labor & Employment Law > Discrimination > Sexual Harassment > Hostile Work Environment
HN4⬇ To prevail on a hostile work environment claim under Title VII of the Civil Rights Act of 1964, a plaintiff must show (1) that he was harassed because of his sex; (2) that the harassment was unwelcome; (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer.

📄 Labor & Employment Law > Discrimination > Sexual Harassment > Hostile Work Environment
HN5⬇ In making the determination whether harassment was severe enough to constitute a hostile work environment for purposes of Title VII of the Civil Rights Act of 1964, the court looks to all the circumstances surrounding his employment and the harassment, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating or a mere offensive utterance; and (4) whether it unreasonably interferes with the employee's work performance.

📄 Labor & Employment Law > Discrimination > Retaliation
HN6⬇ Regarding a retaliation claim under Title VII of the Civil Rights Act of 1964, first, the plaintiff must establish a prima facie case of retaliation. If he can do so, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse action. The defendant's burden is one of production, not persuasion, and the court should not evaluate the credibility of the defendant's explanation. Once the defendant satisfies its burden, the McDonnell Douglas framework - with its presumptions and burdens - disappears, and the sole remaining issue is discrimination vel non. At that point, then, the plaintiff has the burden to prove that the reasons proffered by the defendant are pretextual and that he was the victim of retaliation.

📄 Labor & Employment Law > Discrimination > Retaliation

**HN7** To state a prima facie case for retaliation under Title VII of the Civil Rights Act of 1964, the plaintiff must show that (1) he engaged in protected activity, such as filing an Equal Employment Opportunity Commission complaint; (2) the employer took adverse employment action against the plaintiff; and (3) a causal connection existed between the protected activity and the adverse action.

📄 Labor & Employment Law > Discrimination > Retaliation

**HN8** In the Fourth Circuit, conduct short of ultimate employment decisions can constitute adverse employment action for purposes of Title VII of the Civil Rights Act of 1964 (Title VII). Indeed, what is necessary in all Title VII retaliation cases is evidence that the challenged discriminatory acts or harassment adversely affected the terms, conditions, or benefits of the plaintiff's employment.

📂 Labor & Employment Law > Discrimination > Disparate Treatment

**HN9** The United States Court of Appeals for the Fourth Circuit has found that evidence that, in a Title VII of the Civil Rights Act of 1964 employment discrimination case, the alleged adverse employment action occurred shortly after the employer became aware of the protected activity is sufficient to satisfy the less onerous burden of making a prima facie case of causation. Conversely, however, the United States Court of Appeals for the Fourth Circuit has concluded that a lengthy **time lapse** between the employer becoming aware of the claimant's protected activity and the alleged adverse employment action negates any inference that a causal connection existed.

**COUNSEL:** For STEVEN M. VANDEVANDER, plaintiff: Joe C. Ashworth, Law Office, Leonardtown, MD USA.

For RICHARD J. VOORHAAR, defendant: Kevin Bock Karpinski, Allen, Johnson, Alexander & Karp, Baltimore, MD USA.

**JUDGES:** Catherine C. Blake, United States District Judge.

**OPINIONBY:** Catherine C. Blake

**OPINION: MEMORANDUM**

Plaintiff Steven M. VanDevander has sued Richard J. Voorhar in his individual and official capacities as Sheriff of St. Mary's County, Maryland alleging sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964. Pursuant to earlier motions, the St. Mary's County Sheriff's Office was dismissed as a defendant in this suit, and the plaintiff's claim under 42 U.S.C. § 1983 was dismissed. (CCB-99-1911, Orders issued Jan. 19, 2000 and April 19, 2000.) Thus, only the Title VII claims against Sheriff Voorhar remain. Sheriff Voorhar has moved for summary judgment on that count. The motion has been briefed fully, and no hearing is necessary. See Local Rule 105.6. For the reasons that follow, the motion for summary judgment will be granted.

BACKGROUND

Mr. VanDevander was **[*2]** employed by the St. Mary's County Sheriff's Office from October 1991 through February 1, 1999. (Pl.'s Opp'n at 11, Ex. 1, VanDevander Dep. at 14-15.) Mr. VanDevander began his career as a patrolman and was promoted to deputy first class in December 1995. (Pl.'s Opp'n at 2.) For approximately 30 months of his employment, Mr. VanDevander was assigned to the narcotics division as an undercover officer. During that

time, he developed an allergy to marijuana. (VanDevander Dep. at 42-44.) As a result of that allergy and the stress associated with being an undercover officer, Mr. VanDevander requested reassignment back to uniformed patrol duty. (Id. at 59-60.) That request was granted in 1997. (Id.)

Mr. VanDevander alleges that he was propositioned on two occasions by Deborah Zylak, a civilian employee of the Sheriff's Office. (See Mem. Supp. Mot. for Summ. J., Ex. 1, Response to Interrog. at 10.) First, Mr. VanDevander alleges that Ms. Zylak approached him in late summer 1997 while he was working at a county fair. (Id., Ex. 3, VanDevander Dep. at 133-34.) At that time, she invited him to her house and offered to cook him dinner and to spend the night with him. (Id. at [*3] 137.) Mr. VanDevander declined the invitation but did not report the incident. (Id. at 138.) Several months later, in the hall at the Sheriff's Office, Ms. Zylak repeated the overture and, again, Mr. VanDevander refused. (Id. at 146-47.) n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Ms. Zylak denies having made these advances. (Mem. Supp. Mot. for Summ. J., Ex. 6, Zylak Dep. at 14.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

Ms. Zylak is a records supervisor in the Sheriff's Office. During the time relevant to this lawsuit, her employment involved "reviewing reports [and] warrants, maintaining the schedule and . . . payroll." (Mem. Supp. Mot. for Summ. J., Ex. 6, Zylak Dep. at 7.) She claims to have held no authority over Mr. VanDevander. Mr. VanDevander contends, however, that as a result of his refusing her offers, Ms. Zylak began to affect his employment negatively. Specifically, he alleges that Ms. Zylak created a hostile work environment by: taking money out of his paycheck, altering his schedule, denying his leave requests, refusing to pay him for overtime, leaving "nasty notes" [*4] in his mailbox, informing a fellow employee that he was "faking an injury," and by spreading false rumors about his family. (See Mem. Supp. Mot. for Summ. J., Ex. 1, Response to Interrog. at 10; Pl.'s Opp'n. at 20-22.)

Mr. VanDevander complained to his commander, Lieutenant Robert Hall, soon after the second incident and was told to put the complaint in writing. (VanDevander Dep. at 148-49.) Mr. VanDevander did so, and delivered a Form 35, an informal grievance, to Lieutenant Hall on March 8, 1998. (Mem. Supp. Mot. for Summ. J., Ex. 32.) n2 In that grievance, Mr. VanDevander complained of the harassing invitations as well as "forgery . . . leaving out overtime hours, calling personal and I.W.I.F. in reference to [his] workers comp claims, making derogatory remarks . . . about [his] hospital stay, ambulance ride, and many other items." (Id.) He also informed the Sheriff's Office that he had retained counsel and that, at that time, he was pursuing the grievance solely against Ms. Zylak. (Id.)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 There is some dispute regarding the date on which the grievance was filed. The March 8 date is provided in Mr. VanDevander's Opposition to the Motion for Summary Judgment (at 2) and in a handwritten note on the form supplied as an exhibit to the motion for summary judgment. (Mem. Supp. Mot. for Summ. J., Ex. 32.) The official date on the form, however, is illegible. (Id.) Further, in his complaint, Mr. VanDevander asserts that he filed the grievance in "May 1998." (Compl. P 17.) For the purposes of this motion, the court will resolve the dispute in favor of Mr. VanDevander and assume that the grievance was filed on March 8, 1998.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*5]**

Lieutenant Hall delivered the grievance to his supervisor, Captain James Raley. (Pl.'s Opp'n, Ex. 4, Hall Dep. at 12.) Lieutenant Hall testified that Captain Raley called him into his office a short time later, spoke with him about the incident, and told Lieutenant Hall that he did not have time to deal with it. (Id. at 13.) n3 Despite Lieutenant Hall's delivery of the grievance and subsequent conversations with Captain Raley about it, (id. at 34-36, 40-41), no action was taken on the complaint. (Pl.'s Opp'n at 4.) Thus, in August 1998, Mr. VanDevander filed a formal charge of discrimination with the EEOC; that charge was sent to the Sheriff's Office on September 1, 1998. (Pl.'s Opp'n at 6; Ex. 6.)

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Sheriff Voorhar testified that he had not seen the grievance form prior to the filing of this lawsuit. (Mem. Supp. Mot. for Summ. J., Ex. 33, Voorhar Dep. at 32.) The defendant asserts that Captain Raley testified that he had not seen the document either. (Mem. Supp. Mot. for Summ. J. at 24.) The defendant, however, has not supplied the pages of Captain Raley's deposition that might support such an assertion.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*6]**

Mr. VanDevander cites a series of actions during this time as evidence that he was retaliated against for those filings. The first relates to his application for reassignment from the Patrol Division to the position of Alcohol Enforcement Coordinator. Mr. VanDevander initially requested that reassignment in December 1997 and was given favorable recommendations by Corporal Oliver Stewart, Sergeant Ernest Carter, Lieutenant Hall, Captain Raley, and Sheriff Voorhar; he was designated "for consideration when staffing permitted the filling of the position." (Mem. Supp. Mot. for Summ. J., Ex. 14.) On April 23, 1998, Sheriff Voorhar published a memorandum advertising that such a position was available and stating that "all persons who have previously submitted a detail for this position must reapply." (Id., Ex. 15.) There is no evidence that Mr. VanDevander reapplied, and he was not selected for the position. Rather, he submitted a Form 35 grievance the next day, April 24, requesting a meeting to discuss the reasons he had "not heard anything" since applying for the position in December. (Id., Ex. 16.) Mr. VanDevander submitted a third grievance on May 1, 1998 that requested a meeting **[*7]** to discuss both the reassignment and alleged harassment. (Id.)

The second allegedly retaliatory incident relates to an altercation that occurred as Mr. VanDevander made an arrest on December 6, 1997. The subject of that arrest, Kevin Wood, filed a complaint against Mr. VanDevander for use of excessive force; the Sheriff's Department began an investigation into the matter a few days after the incident. (Id., Ex. 17, Long Aff.; Ex. 18.) On May 18, 1998, Mr. VanDevander was suspended with pay for his role in the altercation and was directed to attend a hearing on May 20. (Id., Ex. 19; VanDevander Dep. at 165-66.) n4 Captain Raley presided over the May 20 hearing, and Mr. VanDevander was represented by counsel. His counsel requested that, due to hostility resulting from the excessive force charge and other job-related stress, Mr. VanDevander be allowed to remain off work until the excessive force charge was resolved. (Id., Ex. 20, 28.) That request was denied, and Captain Raley required Mr. VanDevander to report to the Records Section on May 27 to perform administrative duties. (Id., Ex. 20.) n5 Although the Records Section was supervised by Ms. Zylak, neither Mr. **[*8]** VanDevander nor his counsel objected to the assignment or mentioned the pending grievance at the hearing.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 The administrative leave was imposed following Mr. VanDevander's participation in a formal grievance proceeding initiated by Lieutenant Hall against Ms. Zylak. The subject of that proceeding was Ms. Zylak's practice of signing Lieutenant Hall's name on his requests for leave. See infra, note 16, for a more detailed description of that proceeding.

n5 Captain Raley stated that the assignment to the Records Section was made in an attempt to accommodate the stress Mr. VanDevander had experienced in his position as a patrolman. (Mem. Supp. Mot. for Summ. J., Ex. 20.)

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Mr. VanDevander reported to work on May 27 at which time Captain Raley informed him that Ms. Zylak would be his supervisor in the Records Section. (VanDevander Dep. at 234.) When he expressed discomfort about that assignment, Mr. VanDevander asserts that Captain Raley "blew off" those concerns. (Id. at 234-37.) Mr. VanDevander reported [*9] to Ms. Zylak that morning, and she assigned him to filing. (Id. at 238.) Mr. VanDevander filed for several hours during which time he had periodic interactions with Ms. Zylak when she gave him new assignments or came to the area in which he was working. (Id. at 240-41.) At some point during that day, Mr. VanDevander approached Ms. Zylak, explained the reasons behind the grievance he had filed against her, and told her that, due to the "uncomfortable situation," and in order to protect himself, he would tape record their future conversations. (Id. at 241-42.) Ms. Zylak did not object, and Mr. VanDevander, in fact, did not record any conversations. He did, however, become uncomfortable and leave work early that afternoon to go to his doctor's office. (Id. at 244-45.) Mr. VanDevander has stated that Ms. Zylak did not harass him sexually that day. (VanDevander Dep. at 245.)

Mr. VanDevander did not return to work the next day, and on May 29, his attorney sent a letter to Sheriff Voorhar objecting to Ms. Zylak's supervision of Mr. VanDevander. (Mem. Supp. Mot. for Summ. J., Ex. 28.) Sheriff Voorhar responded to that letter on June 1 with a letter upholding Captain Raley's [*10] decision to assign Mr. VanDevander to the Records Section. (Id., Ex. 29.) n6 Mr. VanDevander remained on sick leave until he returned to work during August 1998. (VanDevander Dep. at 248; Raley Dep. at 41.) Upon his return, Mr. VanDevander was assigned to the Corrections Division in the St. Mary's County Detention Center. (Raley Dep. at 41.) n7

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 The letter from Mr. VanDevander to Sheriff Voorhar is the earliest specific evidence that the sheriff was aware of Mr. VanDevander's complaint against Ms. Zylak. In his reply letter, Sheriff Voorhar wrote:

> With regard to your comments about a past grievance by Dfc. VanDevander, my staff and I are unaware of this incident. Dfc. VanDevander has been temporarily assigned to work in the Records Section under the Special Operations Division Commander. This was done to accommodate Dfc. VanDevander. I do not find anything to support that this would create a hostile working environment for your client.

(Mem. Supp. Mot. for Summ. J., Ex. 29.)

n7 Captain Raley asserts that this assignment was made to accommodate Mr. VanDevander's allergy to marijuana and his stress-related health problems. (Raley Dep. at 41; see also Mem. Supp. Mot. for Summ. J., Ex. 25, 26.)

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*11]

On August 28, Mr. VanDevander submitted a memorandum to Sheriff Voorhar requesting that the time he did not work from May to August 1998 be treated as administrative leave, rather than sick leave or vacation. (Mem. Supp. Mot. for Summ. J., Ex. 31.) The sheriff denied the majority of that request, but reinstated 26 hours of Mr. VanDevander's sick leave. (Id.) n8

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n8 Relatedly, Mr. VanDevander claims that he was denied two hours of overtime for a training session he attended on October 23, 1997. Mr. VanDevander filed an informal grievance related to that matter. In response to the grievance, Captain Raley prepared a detailed report in which he explained that, initially, he told Mr. VanDevander that he was eligible for the two hours of overtime. (Mem. Supp. Mot. for Summ. J., Ex. 39.) He was mistaken, however, and an employee from the personnel department informed Ms. Zylak, who had inquired as to possibility of Mr. VanDevander receiving the two hours of overtime, that the two hours were not compensable. (Id., Exs. 38, 39.) There is no indication that the denial of these two hours of overtime deviates in any way from the normal county policies.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*12]

On September 1, 1998, the Sheriff's Office was notified that Mr. VanDevander had filed a charge of discrimination with the EEOC in which he alleged sexual harassment under Title VII. On September 10, Sheriff Voorhar began an investigation to locate the informal grievance allegedly filed by Mr. VanDevander in either March or May 1998. (Id., Ex. 34.) Neither that investigation nor an inquiry submitted to the St. Mary's Government Department of Human Resources located the grievance filed by Mr. VanDevander. (Id., Ex. 34, 35.)

Shortly after the Sheriff's Office received notice of the EEOC filing, Mr. VanDevander was interviewed by internal affairs officer Michael Merican as part of a separate civil rights lawsuit. Mr. VanDevander contends that Sergeant Merican was hostile toward him, called him a liar in regard to the sexual harassment claim, and pressured him to make a taped statement. (VanDevander Dep. at 152-53, 284-85.)

On September 28, 1998, an administrative trial board was convened to hear the charges against Mr. VanDevander relating to the arrest of Kevin Wood. The board found Mr. VanDevander guilty of using excessive force and of not being truthful in the report he [*13] filed regarding the arrest. (Pl.'s Opp'n, Ex. 11 at 4.) The board recommended that Mr. VanDevander be suspended for five days for the excessive force charge and be demoted from deputy first class to deputy for a one-year period for being untruthful in his report. (Id. at 6.)

Shortly after the trial board returned its decision, Mr. VanDevander discovered a bag of rat poison in his workplace mailbox. (VanDevander Dep. at 279; Mem. Supp. Mot. for Summ. J., Ex. 44.) He contends that the incident was not investigated properly. (VanDevander Dep. at 279.) Sheriff Voorhar assigned Corporal Gregory Laxton to investigate; Corporal Laxton was

unable to determine who placed the poison in Mr. VanDevander's mailbox. (Mem. Supp. Mot. for Summ. J., Ex. 44.) Mr. VanDevander alleges that the investigation was insufficient because Corporal Laxton did not analyze fingerprints recovered from the bag containing the poison and did not conduct a sufficient number of interviews. (VanDevander Dep. at 279-84.) He places the blame for those deficiencies on Sheriff Voorhar and Captain Raley. (Id.) n9

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 Mr. VanDevander also asserts that "[a] subsequent investigation by the [FBI] established that . . . Mr. James Conlon placed the rat poison in [his] mailbox as a 'joke.'" (Pl.'s Opp'n at 7.) There is no evidence that an FBI investigation was conducted into this incident. Steven Doolan, another Sheriff's Office employee, testified that Mr. Conlon told him that he had placed the poison in Mr. VanDevander's mailbox. (Pl.'s Opp'n, Ex. 8, Doolan Dep. at 47.) Mr. Conlon did not answer a question regarding the incident. (Id., Ex. 9, Conlon Dep. at 14.) Mr. Conlon was not interviewed during Corporal Laxton's investigation. (Id.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*14]

Mr. VanDevander also complains that his performance review was lowered as retaliation for his sexual harassment claim. As support for that contention, he has provided three evaluations which cover his employment from approximately January 1996 through December 1997. (Pl.'s Opp'n, Ex. 3.) n10 On those evaluations, Mr. VanDevander received scores of 93.5, 90.5, and 93.8 out of a possible score of 100. (Id.) On the evaluation covering January 1, 1998 through June 30, 1998, however, Mr. VanDevander received a score of 82.5 out of 100. (Mem. Supp. Mot. for Summ. J., Ex. 40.) According to Mr. VanDevander, when he questioned Corporal Oliver Stewart, the officer who gave him the evaluation, regarding the lower score, Corporal Stewart told him that he had been instructed "by his supervisor" to lower the evaluation scores. (Id.) n11

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n10 Each evaluation covers a six month period. The evaluation for July 1, 1996 through December 31, 1996 was not provided.

n11 It appears that the instruction to Corporal Stewart to lower the evaluation scores was intended generally, not just for Mr. VanDevander. In its memoranda, the defendant cites several documents supporting this assertion. (Mem. Supp. Mot. for Summ. J. at 29-30; Reply at 17-18.) Those documents, however, were not included in the record. (Mem. Supp. Mot. for Summ. J., Ex. 40.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*15]

On November 2, 1998, while working at the Department of Corrections, Mr. VanDevander received a death threat from an inmate. (VanDevander Dep. at 257; Mem. Supp. Mot. for Summ. J., Ex. 41.) Mr. VanDevander promptly informed Lieutenant Hall who called Captain Raley and informed him of the threat. (VanDevander Dep. at 258; Raley Dep. at 50.) Captain Raley was busy at the time, told Lieutenant Hall to handle the situation, and instructed Mr. VanDevander to prepare a detailed report. (Raley Dep. at 50-51.) Mr. VanDevander reported the incident to the Maryland State Police and submitted a written report to Sheriff Voorhar on November 5. (Mem. Supp. Mot. for Summ. J., Ex. 41.) Mr. VanDevander contends that the threat was investigated inadequately. n12

---------- Footnotes ---------------

n12 Sergeant Deborah Diedrich filed a report on November 16, 1998 in which she stated that, at Lieutenant Hall's request, Deputy First Class Mark Porter was sent to the Detention Center on November 2 to interview Mr. VanDevander. (Mem. Supp. Mot. for Summ. J., Ex. 43.) According to the report, Officer Porter was unable to locate Mr. VanDevander at that time. (Id.) Also, as part of that report, Sergeant Diedrich stated that Captain Raley altered Mr. VanDevander's duties so that the kitchen area was under his supervision. As a result, Mr. VanDevander was required to eat lunch at the Detention Center. (Id.) Mr. VanDevander has complained that this change in duties was part of the retaliatory conduct. (Id., Ex. 1, Resp. to Interrog. at 2-3.)

----------- End Footnotes- ------------- [*16]

On January 25, 1999, Sheriff Voorhar, after considering the trial board's recommendation on the excessive force charges, reviewing the entire record of proceedings, and meeting with Mr. VanDevander, determined that the penalty should be increased and, accordingly, terminated Mr. VanDevander effective February 1, 1999. (Pl.'s Opp'n, Ex. 12.) On January 27, Mr. VanDevander filed an informal grievance regarding his termination. (Id., Ex. 13.) On March 26, Mr. VanDevander filed a second charge of discrimination with the EEOC. (Id., Ex. 14.) In that claim, he alleges that he was terminated in retaliation for his earlier sexual harassment and retaliation charges. (Id.)

Mr. VanDevander appealed his termination to the Circuit Court for St. Mary's County, Maryland which upheld Sheriff Voorhar's action. See VanDevander v. Voorhar, 136 Md. App. 621, 767 A.2d 339, 343 (Md. Ct. Spec. App. 2001.) On February 23, 2001, the Maryland Court of Special Appeals reversed the trial court and found that Sheriff Voorhar did not follow the appropriate procedures in elevating Mr. VanDevander's punishment. 767 A.2d at 345. It also reversed the trial board's conclusions that Mr. [*17] VanDevander used excessive force and was untruthful. Id. at 347-48. Accordingly, the court found that Mr. VanDevander should be reinstated and should not have suffered any discipline. Id. at 345. n13 At the time Mr. VanDevander filed his opposition to the motion for summary judgment, he had not been reinstated. (Pl.'s Opp'n at 11.)

-------------- Footnotes ---------------

n13 The Sheriff's Office did not file pleadings in that case and did not appear at the hearing. VanDevander, 767 A.2d at 341 n.1. It contends that those omissions were the result of errors committed by its former counsel. (Mem. Supp. Mot. for Summ. J. at 4 n.3; Def's Reply at 15 n.3.) Through new counsel, it has filed a petition for certiorari to the Maryland Court of Appeals. (Def's Reply, Ex. B.)

----------- End Footnotes- -------------

Mr. VanDevander filed this lawsuit on July 25, 1999. In the original complaint, he named Sheriff Voorhar and the St. Mary's County Sheriff's Office as defendants and stated claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983. [*18] In January 2000, the court dismissed the St. Mary's County Sheriff's Office as an improper party and permitted Mr. VanDevander to file an amended complaint to name the proper defendant. (CCB-99-1911, Memorandum and Order issued Jan. 19, 2000.) n14 In his amended complaint, Mr. VanDevander restated the Title VII and § 1983 claims and added Sheriff Voorhar in his

official capacity as the Sheriff of St. Mary's County, in addition to his individual capacity, as a defendant. Pursuant to an unopposed motion, the court dismissed Count II, the § 1983 claim, for failure to state a claim upon which relief could be granted. (CCB-99-1911, Order issued April 19, 2000). n15 Thus, Mr. VanDevander's Title VII claim against Sheriff Voorhar in his individual and official capacities remains. Sheriff Voorhar has moved for summary judgment on that count.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n14 In that Order, the court also deferred a final ruling on Sheriff Voorhar's motion to dismiss the § 1983 claim against him.

n15 On May 5, 2000, the court officially dismissed the same count from the initial complaint. (CCB-99-1911, Order issued May 5, 2000.)

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*19]

STANDARD OF REVIEW

HN1 Rule 56(c) of the Federal Rules of Civil Procedure provides that:

[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

HN2 A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in her favor. Halperin v. Abacus Tech. Corp., 128 F.3d 191, 196 (4th Cir. 1997) (citing Anderson, 477 U.S. at 255). The non-moving party may not rest upon mere allegations or denials in her pleading, however, but must set forth specific facts showing that there is a genuine issue for trial. Anderson, 477 U.S. at 248; [*20] Allstate Fin. Corp. v. Financorp, Inc., 934 F.2d 55, 58 (4th Cir. 1991). The "mere existence of a scintilla of evidence in support of the plaintiff's position" is not enough to defeat a defendant's summary judgment motion. Anderson, 477 U.S. at 252.

ANALYSIS

I. Sexual Harassment

HN3 Title VII precludes an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . .." 42 U.S.C. § 2000e-2(a)(1). "Because the workplace environment is one of the 'terms, conditions, or privileges of employment,' . . . Title VII creates a cause of action in favor of persons forced to work in a hostile workplace." Hartsell v. Duplex Products, Inc., 123 F.3d 766, 772 (4th Cir. 1997) (quoting Meritor Savings Bank v. Vinson, 477 U.S. 57, 64-67, 106 S. Ct. 2399, 2403-05, 91 L. Ed. 2d 49 (1986). See also Meritor, 477 U.S. at 66, 106 S. Ct. at 2405 (finding "that a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile [*21] or abusive work

environment"). [HN4] To prevail on a hostile work environment claim, Mr. VanDevander must show "(1) that [he] was harassed 'because of' [his] 'sex'; (2) that the harassment was unwelcome; (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer." Smith v. First Union Nat. Bank, 202 F.3d 234, 241 (4th Cir. 2000) (citing Hartsell, 123 F.3d at 772).

Assuming that Mr. VanDevander can meet the first two prongs of that analysis, he has not shown that the [HN5] harassment was severe enough to constitute a hostile work environment. In making that determination, the court looks to all the circumstances surrounding his employment and the harassment including "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating or a mere offensive utterance; and (4) whether it unreasonably interferes with [the] employee's work performance." Id. at 242 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 371, 126 L. Ed. 2d 295 (1993)).

Mr. VanDevander [*22] alleges that Ms. Zylak propositioned him on two occasions and, after he refused her invitations, began to affect his employment negatively. He has not produced any evidence, however, to prove that Ms. Zylak had the authority to affect the terms of his employment in any way. She was not his supervisor and did not have authority to approve or change his leave or schedule. n16 Mr. VanDevander's assertion that, although "Ms. Zylak did not have authority to affect changes in Plaintiff's terms and conditions of employment, the record demonstrates that she effectively could recommend such actions," (Pl.'s Opp'n at 21), is plainly insufficient to demonstrate that Ms. Zylak could create a hostile work environment. Without that showing, the two "propositions" are not sufficiently egregious conduct to constitute a hostile work environment. Accordingly, the defendant's motion for summary judgment on this count will be granted.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n16 There is some disagreement between the parties about the approval of leave requests. For some time prior to 1998, Ms. Zylak was in the habit of signing employees' names, with her initials underneath, to requests for leave and submitting the requests to a supervisor for approval. (Mem. Supp. Mot. for Summ. J., Ex. 8.) Apparently, she did so in order to streamline the approval process. (Id.) On March 20, 1998, Lieutenant Hall filed a formal grievance requesting that Ms. Zylak stop signing his name on requests for leave. (Id.) This grievance does not reflect Ms. Zylak's ability to approve leave; indeed, the requests still had to be approved by a supervisor. Rather, it concerned her signing Lieutenant Hall's name to his personal requests for leave before submitting them to a supervisor for approval. Thus, the grievance does not support Mr. VanDevander's contention that Ms. Zylak had the power to affect the terms or conditions of his employment.

- - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - - [*23]

II. Retaliation

The familiar McDonnell-Douglas proof scheme applies to Mr. VanDevander's claim for retaliation. See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 656 (4th Cir. 1998). That structure was clarified by the Supreme Court in Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). [HN6] First, the plaintiff must establish a prima facie case of retaliation. 120 S. Ct. at 2106. If he can do so, the burden shifts to the defendant to provide "a legitimate, nondiscriminatory reason" for the adverse action. Id. (quoting Texas Dep't of Community Affairs v. Burdine, 450

U.S. 248, 254, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981)). The defendant's burden is one of production, not persuasion, and the court should not evaluate the credibility of the defendant's explanation. See id. Once the defendant satisfies its burden, "the McDonnell Douglas framework - with its presumptions and burdens - [disappears] and the sole remaining issue [is] discrimination vel non." Id. (internal citations and punctuation omitted). At that point, then, the plaintiff [*24] has the burden to prove that the reasons proffered by the defendant are pretextual and that he was the victim of retaliation. Dowe, 145 F.3d at 656.

HN7 To state a prima facie case for retaliation, the plaintiff must show that "(1) [he] engaged in protected activity, such as filing an EEO complaint; (2) the employer took adverse employment action against plaintiff; and (3) a causal connection existed between the protected activity and the adverse action." Hooven-Lewis v. Caldera, 249 F.3d 259, 2001 WL 460753, *12 (4th Cir. 2001) (quoting Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998)). Mr. VanDevander has satisfied the first requirement. He filed an informal grievance regarding Ms. Zylak's sexual advances on March 8, 1998, n17 and charges of discrimination with the EEOC in August 1998 and March 1999.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n17 The defendant argues at length about the filing date of the informal grievance and the potential ambiguities in its language. (See Mem. Supp. Mot. for Summ. J. at 46-49.) As this is a motion for summary judgment, the court is required to view the evidence in the light most favorable to Mr. VanDevander. Accordingly, for purposes of resolving this motion, the court will assume that the informal grievance was filed on March 8, 1998 and was sufficient to put the Sheriff's Office on notice that Mr. VanDevander was alleging sexual harassment.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*25]

To fulfill the second requirement for a prima facie claim, Mr. VanDevander lists a series of incidents which he classifies as adverse employment actions. HN8 In the Fourth Circuit, "conduct short of 'ultimate employment decisions' can constitute adverse employment action for purposes of [Title VII]." Von Gunten v. Maryland, 243 F.3d 858, 865 (4th Cir. 2001.) n18 Indeed, "what is necessary in all [Title VII] retaliation cases is evidence that the challenged discriminatory acts or harassment adversely affected the 'terms, conditions, or benefits' of the plaintiff's employment." Id. (citing Munday v. Waste Mgmt. of North America, Inc., 126 F.3d 239, 243 (4th Cir. 1997)). Mr. VanDevander complains of the following retaliatory actions: the enhancement of the trial board's recommended penalty from suspension to termination, being forced to work under Ms. Zylak's supervision in the Records Section, the denial of his leave requests, the alteration of his schedule, the fact that he was not interviewed for the Alcohol Enforcement Coordinator position, the lowering of his performance appraisals, the failure to properly investigate the death threat and rat [*26] poison incident, the denial of lunch hours while working at the Detention Center, and being threatened by Officer Merican during an investigation. (Mem. Supp. Mot. for Summ. J. at 6-7, 50-58, Ex. 1 at 2-3; Pl.'s Opp'n at 15-19.)

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n18 The Fourth Circuit has termed such actions "retaliatory harassment." Von Gunten, 243 F.3d at 865.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

The defendant argues that several of those allegations do not rise to the level of "adverse employment actions." The enhancement from suspension to termination of the penalty proposed by the trial board, however, clearly affected the "terms, conditions, or benefits" of Mr. VanDevander's employment. See Von Gunten, 243 F.3d at 864-65. Thus, Mr. VanDevander has met this requirement for stating a prima facie claim. In the context of this case, however, the court agrees that the other allegedly retaliatory actions are not adverse employment actions. While it is true that, in the appropriate circumstance, the lowering of performance appraisals, failure to [*27] investigate death threats, alteration of a work schedule, denial of leave or an interview, or refusal to compensate for overtime might constitute adverse employment actions, none rise to the necessary level in this case. n19 See id. at 867-69. Mr. VanDevander has made no showing that the actions taken by the Sheriff's Office related to those allegations in any way affected the terms or conditions of his employment. See id. n20

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n19 For example, the death threat was, in fact, investigated, though not as thoroughly as Mr. VanDevander perhaps thought it should be; Mr. VanDevander was not interviewed for the Alcohol Coordinator position after he failed to reapply as directed.

n20 Moreover, he relies on several actions over which the Sheriff's Office had no control. The County, not the Sheriff's Office, denied his request for overtime, (Mem. Supp. Mot. for Summ. J. at 51, Ex. 38), and the trial board recommended his demotion from deputy first class to deputy.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

To complete the prima facie case, [*28] Mr. VanDevander must show a causal connection between the protected activity and adverse action. To make that showing, he relies entirely on the timing of the adverse actions taken against him. (Pl.'s Opp'n at 14-15.) HN9 The Fourth Circuit has found that "evidence that the alleged adverse action occurred shortly after the employer became aware of the protected activity is sufficient 'to satisfy the less onerous burden of making a prima facie case of causation.'" Dowe, 145 F.3d at 657 (emphasis omitted) (quoting Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989)). Conversely, however, the court has concluded that "a lengthy **time lapse** between the employer becoming aware of the claimant's protected activity and the alleged adverse employment action negates any inference that a causal connection existed." Lewis v. Caldera, 2001 WL at *16. See also Dowe, 145 F.3d at 657. In this case, the Sheriff's Office was notified of Mr. VanDevander's EEOC claim on September 1, 1998. n21 Sheriff Voorhar did not make the decision to terminate Mr. VanDevander until January 25, 1999, nearly five months after he became aware of the protected [*29] activity. Absent any other showing of a causal connection, the five-**month time lapse** is, in this case, too long to support a finding that Sheriff Voorhar terminated Mr. VanDevander in **retaliation** for his protected activity. See Lewis v. Caldera, 2001 WL at *16 ("A six **month** lag is sufficient to negate any inference of causation.") (citing Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1395 (10th Cir. 1997)).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n21 That charge is the protected activity closest in time prior to Mr. VanDevander's termination.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Thus, Mr. VanDevander has not made a prima facie showing of retaliation. Further, even if he had, Mr. VanDevander has produced no evidence to demonstrate that the nondiscriminatory reasons given for his termination were pretextual. The defendant has argued that Mr. VanDevander was terminated as a result of the severity of the charges found against him by the administrative trial board. (Def.'s Reply at 15; Mem. Supp. Mot. for Summ. J., Ex. 24, Raley Dep. at 32-33.) Mr. VanDevander offers [*30] no evidence that this explanation is untrue. Indeed, Mr. VanDevander was told when the administrative proceedings began in May 1998, that the charges against him were very serious and might result in his termination. (Raley Dep. at 32-33; Mem. Supp. Mot. for Summ. J., Ex. 20.)

Accordingly, the defendant's motion for summary judgment will be granted. A separate Order follows.

May 30, 2001

Date

Catherine C. Blake

United States District Judge

**ORDER**

For the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that:

1. The defendant's motion for summary judgment is **granted**;

2. The Clerk shall **Close** this case; and

3. Copies of this Order and the accompanying Memorandum shall be mailed to counsel of record.

May 30, 2001

Date

Catherine C. Blake

United States District Judge

Source:   My Sources > Federal Legal - U.S. > Combined Federal Court Cases > 4th Circuit - US Court of Appeals, District & Bankruptcy Cases, Combined ⓘ
Terms:   retaliat! w/s months w/p lapse w/s time  (Edit Search)
View:   Full
Date/Time:   Tuesday, August 5, 2003 - 9:47 AM EDT

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.