IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Patricia Claude,

Plaintiff

V.                              Case No. JFM 022511

Harbor Hospital Center,

      Defendant


# PLAINTIFF'S MOTION FOR RECONSIDERATION OF

# COURT'S ORDER GRANTING

# DEFENDANT'S MOTION   FOR SUMMARY JUDGMENT


      Plaintiff by the undersigned attorney files this motion for reconsideration and asks the court to alter or amend the summary judgment. This motion does not seek relief from the judgment under Federal Rule of Civil Procedure 60. As grounds for this motion, Plaintiff states as follows:

1. Plaintiff's evidence shows that she made out a prima facie case of discrimination in view of all of the circumstantial evidence in that she had complained of racial discrimination, and, the defendant followed an irregular procedure in terminating and disciplining. Plaintiff.

2. . Plaintiff 's evidence showed that there was intentional infliction of emotional distress. Where there is an employer /employee relationship the employer is held to a higher standard.

3. The judgment contains a clear error of law, and reconsideration is necessary to prevent manifest justice. Collision v. International Chem. Workers Un. Local 217, 34 F3d 233, 236 (4th Cir. 1994)

4. As further grounds, Plaintiff submits the attached Memorandum and attachments. Wherefore, Plaintiff requests the Court to grant her motion for reconsideration.

Respectfully Submitted,

_____
Norris C. Ramsey
Norris C. Ramsey P.A.
2122 Maryland Ave.
Baltimore, Maryland 21218
Trial bar No. 01453

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND


Patricia Claude,

Plaintiff

V.                                    Case No. JFM 022511

Harbor Hospital Center,

    Defendant

## PLAINTIFF'S MEMORANDUM
## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION
## FOR RECONSIDERATION

## I. INTRODUCTION

Plaintiff filed suit under the 1866 Civil Rights Act.  She alleged that she was discriminated against on the basis of her race when she was terminated from her employment after approximately 15 years.  She claims that she was retaliated against because she spoke up for her civil rights, and, the defendant and intentionally inflicted emotional distress upon her.

As discussed below, there is a dispute of facts and the inference is to be drawn, from facts not in dispute prevented  the grant of summary judgment as a matter of law.

## DISCUSSION OF MATERIAL FACTS

Plaintiff Patricia Claude was employed in Harbor Hospital's Admitting and Registration Department has a Patient Registrar.

She had been employed by the defendants since 1988 and had been so employed for

15 years.

Plaintiff had two supervisors. Who are important to this case?  The first supervisor was Lucy White and the second supervisor was Tim Shetterly. See deposition attached.

After plaintiff can under the supervision of Tim Shetterly, she began to have difficulties with his supervision.

Plaintiff had been the subject of a Patient Satisfaction Survey.  Based on these surveys, plaintiff received disciplinary action for allegedly being rude to patients. Out of 35 to 40 Registrars, Plaintiff was the only Registrar to be subjected to a patient survey.

Plaintiff denied that she had been rude to patients and informed Tim Shetterly that she believed that the complaints were racially motivated.  Tim Shetterly denies that he had any such conversations with Plaintiff.

Due to the management difficulties plaintiff had with Tim Shetterly, she approached the vice president of the defendant and complained that she believed that Tim Shetterly's actions and patient complaints were motivated by racism. Defendant's vice president, Deborah Kephart denies that plaintiff ever complained to her about racism while agreeing that plaintiff approach her to complain about Tim Shetterly. Kephardt agrees that Plaintiff approached her to speak to the president of the organization but she referred her to Human Resources, Darlene Lawyer.  While Ms Lawyer agrees that Plaintiff came to her to complain about Tim Shetterly, she denies that Plaintiff complained about racism.

Plaintiff was scheduled to take sick leave because she was scheduled to have surgery on her breast to determine if she had cancer.

Defendant was well aware that plaintiff had health problems. When plaintiff visited

human resources to discuss her leave, Darlene Lawyer informed her that it had been recommended that she be terminated, but the defendant did not want her to go into surgery with that on her mind.  Darlene Lawyer denies that she ever said this to the Plaintiff.

Due to the racism, stress and hostility towards her by defendant, Plaintiff approached the employee assistance program. See letter from Defendant's counsel Mrs. Fiona Ong dated August 15, 2003 attaching the Prime Employee Assistance Program, Inc.  documents. This document dated from 1/02/02 to 5/17/02 describes Plaintiff's emotional condition as a result of the defendant's conduct towards her including acts of racism and retaliation. It explains that she was suspended the day before her surgery.

This document contain evidence that Plaintiff was suffering from depression including inability to sleep and eat, crying spells, intrusive thoughts, Dr. visits and the fact that Dr. Kendawall had placed her on an antidepressant, Zoloft to help with her depression.

At page 5 of its memorandum, defendant mentions the handbook given to employees. The handbook includes among other things a code of conduct concerning harassment and not to be retaliated against for raising complaints. Obviously, an issue is being raised as to whether or not the defendant retaliated against plaintiff in violation of its own code of conduct because she spoke up for her civil rights.  This is an issue concerning retaliation against the plaintiff after she complained about racism by Tim Shetterly to management.

Defendant began to conduct patient's surveys of Plaintiff in order to build a case for her termination.

While the plaintiff was under the supervision of Lucy White, Lucy White appeared to be satisfied with her performance.

Claude Deposition 5-8,14-25,52-54,91-118,, 149-150-157, 161-166, 179, 185-186, 190-191,204-208, 210-214, 220, 227-229.

## TESTIMONY OF LUCY WHITE

During plaintiff's employment, and, while she was supervised by Lucy White who found plaintiff was very dependable.  She never really had any complaints until it was around 1999 when she went to the X-ray department. White supervised plaintiff in the Emergency Room and Registration.  White P. 4. Even though plaintiff allegedly had patient complaints, she was never written up or disciplined for such alleged conduct.

Plaintiff had worked in ER as a registrar. White Page 5. According to Ms White, Plaintiff began to have complaints from Joe Zilox.   She was never written out about any of those complaints.  White 5-- 6. Allegedly, plaintiff was being rude to patients.  Ms White never observed plaintiff being rude to patients.  White Page 7

Mrs. White reviewed the performance evaluations of plaintiff.  Initially, she reviewed the performance evaluation for April 1st 2000 through March 31st 2001.  White Page 8.  She gave Plaintiff  a total assessment of 435.  The highest she could receive was 550.  On the scale of 1 to 10, Ms. White would give her a 7 or 8.  White age 9

Mrs. White stopped supervising plaintiff in 2000.  White page 10

While plaintiff was under her supervision, she never had a labeling error.  White page 11

Ms. White did hear about plaintiff's labeling errors after plaintiff was no longer under her supervision.  White had been employed for 27 years.  Ms. White has never had an employee mislabel a file.  White pages 11 -- 12

Plaintiff was transferred from Ms White's supervision to Tim Shetterly's supervision. White page 12

After plaintiff became employed under Tim Shetterly's supervision, her problems began. Ms. White knew Shamira Cook, an African American female. White page 20. Ms. Cook was disciplined on 4/22/02

Plaintiff asked for assistance, while in X-Ray, but, the defendant was short staffed, and, defendant had no one that could assist her. White page 23. Plaintiff had been transferred to Admitting, but then she was transferred back to X-ray. White Pages 23 -- 24

After one year, Defendant was not to consider disciplinary actions more than one year. That is, under the disciplinary procedures, if an individual had been disciplined in 1989, that disciplinary action would not be considered in 2001 and disciplining the employee. White page 26 -- 27.

All disciplinary actions are handled through personnel. White page 28.

The employees were evaluated on technical and behavior. White page 31

Mrs. White reviewed several evaluations with the dates of 4/1/99 to 3/31, 2000. On behavior, she was rated 18 out of a possible 25. Ms. White reviewed the evaluations, and, in most instances, the plaintiff had received at least two out of a possible 3. White page 31 through 38. If there had been disciplinary actions in the plaintiff's file, it would have been considered as a part of the evaluation. White 38. Based on the performance review, Ms. White testified that Ms. Claude was performing her job up to the employer's expectations. White page 38.

When the patient complained, the supervisor talked to the person who complained as

well as the employee.  Whether or not a disciplinary action is taken, as a result of the patient complaints, would depend upon the severity.  White Page 40

Mrs. White testified that she did not know whether or not the patient's surveys were instituted because of patient dissatisfaction.  White 42 -- 43.  The surveys were begun because of plaintiff's transfer and patient complaints while under the supervision of Ms. White.  White pages 43 – 44.  Ms. White never wrote the plaintiff up.  White page 44

Plaintiff was transferred out of x-ray so that she could have closer supervision. White page 45.  Plaintiff was very professional when she came to work.  White page 45

Under examination by defendant' s counsel, Ms. White testified that except for two areas in which plaintiff received 1.5,1 her 1999 to 2000 evaluation, her performance was overall satisfactory.  White page 48.  The areas in which she received below satisfaction was for customer service focus, 1.5 because of customer satisfaction complaints, surveys.  As to behavioral competency, she also received a 1.5.  White pages 48 -- 49, 50

In sum, Ms. White's testimony showed that plaintiff was performing in overall satisfactory manner for the defendant until she was transferred to the supervision of Tim Shetterly.  Furthermore, despite alleged customer complaints, there were none in Ms. Claude's file while she was under the supervision of Ms. White.  Furthermore, it appears on this testimony that plaintiff was singled out for customer survey satisfactions.

### Testimony of Deborah Kephart.

Ms. Kephardt is a vice president of Harbor Hospital.  She claims that she knows nothing about plaintiff's termination. She does acknowledge that the plaintiff came to her to speak to her about the disciplinary problems she was having.  She further testified that plaintiff had

come to see the president of the hospital who was unavailable.  She explained to Ms. Claude

that she needed to speak with Darlene Lawyer, in human resources.  She further explained to

the plaintiff that there was a grievance process.  Ms. Lawyer was called and informed that Ms.

Claude was on her way.  Ms. Kephardt did not know when this occurred.  She claims that

plaintiff did not mention any names, that is, whether she was complaining about Tim Shetterly

or racism. Ms. Claude complained that she had been treated unfairly and unfairly disciplined.

She testified that plaintiff never complained about race and she never claimed that Tim

Shetterly was treating her in a racist manner.  Kephardt page 6.  Ms. Kephart further testified

that plaintiff never complain to her about comments that were being made her my Tim

Shetterly.  Kephart page 6-7

### Testimony of Dawn C. Hoffman

Medstar Health employed Ms. Hoffman.  She worked at Harbor Hospital.  She Is a

Compensation Analyst.  Hoffmann Page 4.  She first met Pat Claude during a grievance

process as a result of her termination.  Hoffmann Page 6. She spoke with Darlene Lawyer

concerning Ms. Claude Complaints about Mr. Shetterly.  Hoffmann Page 6-7 .  She recalled

that plaintiff complained to Ms. Lawyer that Tim Shetterly was out to get her. Hoffman Page 8.

Diane lawyer then began to show Ms. Hoffman various patient complaints.  Hoffmann page 8.

Darlene Lawyer consulted with her before terminating the plaintiff.  Hoffmann page 9

Ms. Hoffman testified that there were several factors considered when making the decision to

terminate Ms. Claude.  According to Ms. Hoffman a first written warnings would last 12

months.  You could not review a past disciplinary action that was older than 12 months.

Hoffmann page 15.  At this point, defendant's counsel began to make speaking objections in

violation of the federal rules of procedure where she apparently attempted to educate Ms

Hoffman. See Hoffman page 17 through 18.

Ms. Hoffman reviewed the disciplinary action that was taken against another employee,

for infractions very similar to those of the plaintiff.  It was clear that the defendant did not follow

all of the steps in the disciplinary action as it did when it came to plaintiff.  This was the

disciplinary action against Ms. Cook, an African American.  Ms. Cook had her first error August

2001.  She was given a verbal warning.  For next error was in November 2001, and she was

given a first written warning.  These were for failure to register HMO patients.  The next one

was on April 22nd 2002.  She was given a first written warning as opposed to a final written

warning and a suspension.  Ms. Hoffman was not able to explain why the disciplinary

procedure had not been followed.  Hoffmann page 19.  There were two disciplinary actions

after that.  One of those disciplinary actions was for absence and one was for tardiness.

Apparently, defendant separated tardiness and absence from other disciplinary actions.

Hoffmann page 20.  At page 21 Ms. Hoffman explains that if a particular employee under

discussion had performed the same error again that is, mislabeling, it should have been a

termination.  Hoffmann page 21

The first issue with Ms. Claude concern HMO patients that cost the hospital revenue.

Hoffmann page 25.  The other two errors were patient labeling errors. This involved patient

safety.  Hoffmann page 25

When Ms. Hoffman reviewed the disciplinary actions of Ms. Cook, she could not discern

from the first HMO labeling if it involved loss of revenue because it was not mention on the

form.  Hoffmann 26.  Her second HMO error did not reflect whether or not there was a loss of

revenue.  It involved reimbursement for the hospital.  Hoffmann page 26.  Ms. Cook had made

the same type of mistake twice.  Hoffmann page 27.  These errors occurred within three

months of each other.  At page 28 of her deposition, Ms. Hoffman reviewed the third

disciplinary action against Ms. Cook which was labeled a first written warning as opposed to

the following the disciplinary procedure which would have been written warning with

suspension. Hoffmann page 28.  Plaintiff however was taken through the disciplinary steps and

terminate.  In addition to the disciplinary actions discussed, Ms. Cook had other disciplinary

actions for unscheduled absences, absenteeism and one for tardiness.  Hoffmann page 28.

When determining whether or not to discipline Ms. Cook, as required by the disciplinary

procedures, Ms. Hoffman's stated that she looked at the nature and severity, prior history of

that type of error and her last corrective actions.  She had made two HMO errors that were not

patient safety, and she looked at the number of months that had transpired between her errors.

But with certainty, she could not tell why Ms. Cook received a first written warning as opposed

to a final written warning and suspension.  Hoffmann page 30.  Plaintiff was treated different.

## TESTIMONY OF MARY DARLENE LAWYER

Ms. Lawyer is a human resources generalist.  Lawyer Page 4.  From July 2000 to the

summer or November of 2002, she took disciplinary actions. Lawyer Page 5.  This included the

time that Pat Claude was employed by the defendant.  The supervisors would actually handle

the disciplinary action.  Lawyer Page 5.

## <u>ARGUMENT</u>

Plaintiff adopts the standard for summary judgment as set forth by the defendant.

Plaintiff however submits that where motive, intent, and state of mind are an issue, Those

11

questions are for the jury. Plaintiff adopts the legal standards applicable to section 1981 as announced by the defendants.

Defendant's initial argument is that plaintiff's harassment plan is without basis.

Plaintiff alleged that Tim Shetterly subjected her to harassment on the basis of her race. This harassment consisted of asking her if her aging husband could still go, whether she knew drug dealers, comments concerning her vehicle and whether or not she could afford a house. Furthermore, plaintiff claims that she complained to concerning Mr. Shetterly's disciplinary action against her and, because she felt that it was because of her race.

The court held   that plaintiff cannot establish a prima facie case of discrimination or retaliation.

The defendant has adequately set forth the prima facie elements that plaintiff must prove.

First, plaintiff must prove that she is a member of a protected class. This should not be in dispute, Plaintiff is African American.     Second the defendant contends that plaintiff must show that her conduct was of comparable seriousness to the misconduct of employees not within her protected class. While plaintiff agrees that Ms Cook is not out side her protected class, other evidence in conjunction with the treatment of Ms Cook satisfies this issue.

When one compares the employment record of plaintiff with that of Ms Cook, where the defendant  followed   a more favorable irregular disciplinary procedure follow which it did not follow with plaintiff, in conjunction with plaintiff's  complaints of racism, it is clear that when all of this is looked at together, that plaintiff was treated differently after she complained about racial discrimination and terminated.  The third element defendant argues is that the discipline

imposed upon plaintiff was not more severe than that imposed upon similarly situated employees.

The holding in Village Of Arlington Heights in the Metropolitan Housing Development Corp, 429 U.S. 252 (1977) supports Plaintiff's position. There, the court held that a departure from the regular course of proceedings itself is evidence of discrimination. As discussed above, the defendant followed its procedures with regard to other employee; however, it deviated from this disciplinary procedures and policy with regard to Ms Cook. That is, whereas this employee should have been terminated under the defendant's disciplinary policies and procedures, the defendant did not follow the disciplinary procedures that would have resulted in her termination. When this is considered along with the evidence that plaintiff complained about racial discrimination to Tim Shetterly, the human resources manager, and the vice president of the hospital and Ms Cook's disciplinary record including the same conduct as the plaintiff, defendant's motion should be denied.

Where there is irregularity in following procedures by an employer with regard to treatment of employees, it can be evidence of discrimination. Bickerstaff vs. Vassar College, 196 F 3rd 435, 453 -- 454. See deposition of Darlene Lawyer and Lucy White. Similarly, in Norville vs. Staten Island University Hospital 196 F. 3rd 89, 97 (2d Cir. 1999) there the court held that the plaintiff established enough circumstantial evidence to give rise to an inference of discrimination. "In carrying the burden, it is enough for a plaintiff to present evidence that an employer departed from its usual employment practices and procedures in dealing with that particular employee. In that case, a union representative testified that when equally qualified applicants apply for a job, it ordinarily goes to the applicant with more seniority. There, the

employer placed the individual in the position that had less seniority.  Furthermore, there was

testimony that although the employer does not typically make hiring decisions without checking

the applicant's performance histories he did not do so in that particular case.  Id 97.

Plaintiff submits that this evidence clearly establishes a, prima facie case of racial

discrimination.  While the evidence in this case does not typically follow the evidentiary proof

scheme articulated by the defendant and the court, when one considers that the defendant

only subjected to plaintiff to patient surveys, plaintiff's complaint about racial discrimination, the

difference in treatment of the plaintiff with regard to the disciplinary procedures, defendant's

motion should be denied.

RETALIATION

The defendant further argues that plaintiff cannot establish a, facie case of retaliation.

Again, defendant  has articulated its proposed elements that the plaintiff must meet in order to

establish a prima facie case of retaliation.  It relies upon <u>Hopkins Vs. Baltimore Gas and</u>

<u>Electric Company</u>, 77 F. 3rd 745,754 (4 circuit), cert denied 519 U.S. 818 (1996)

In this context, defendant claims that plaintiff cannot establish that she engaged in

protected activity which is the first element of the, facie case of retaliation.

The testimony on this issue is in dispute.  Plaintiff claims that she spoke to the vice

president of the defendant concerning the treatment that she was receiving from Tim Shetterly

which he considered to be racist. She has testified that she approached the vice president Ms

Kephardt and complained    She was then sent to Darlene Lawyer, the human resources

manager who acknowledged that plaintiff came to her and complained about the management

of Tim Shetterly.  However, she claims that plaintiff did not complained about racist behavior

14

by Tim Shetterly.  Again, this is in conflict.  Plaintiff's testimony is to the effect that she did speak with both of them concerning the racist behavior of Tim Shetterly.  Defendant however attempts to ignore this evidence.  Defendant somehow another reads plaintiff's deposition as if she did not complain about the discriminatory activity of Mr. Tim Shetterly.  It attempts to limit plaintiff's claims of discrimination to the fact that she said to Mr. Tim Shetterly that she believed that the patients had racist overtones concerning their complaints.  Moreover, she also complained about the various comments made to her by Tim Shetterly that made her feel that he was being racist.  When one considers all of this together, it is obvious that the plaintiff did speak up concerning violation of civil rights.  Thus, defendant's reasoning that plaintiff cannot establish that she engaged in protected activity should be rejected.  See Metropolitan Washington Airport Authority 149 F. 3rd 253,259 (4th Cir. 1998).

    Defendant further desires to ignore plaintiff's testimony that she complained to Darlene Lawyer, the human resources manager, and the vice president of the hospital concerning racism by Tim Shetterly. These witnesses agree that plaintiff spoke to them.  But, they testified that plaintiff never mentioned racism to them.  This is a dispute of fact that prevents the grant of summary judgment.

    Defendant argues moreover that the so-called "complaint".  It does not describe what it considers "complaint".  Moreover, plaintiff's testimony that she had complained about racial discrimination to her managers is supported by the recent document submitted to plaintiff's counsel by the defendant on or about August 15, 2003. Where plaintiff clearly describes the racist atmosphere and the fact that she had complained about racial discrimination.  See attachment 1 a thus, defendant's motion on this issue should be denied.

Defendant next argues at page 27 of its memorandum that plaintiff's termination claim is without basis.  Plaintiff submits that she has discussed the facts in this case that shows that the circumstantial evidence along with the proximity of the time that she complained about racial discrimination and her termination clearly supports her claim of racial discrimination.

Defendant then makes the redundant argument at page 27 of its memo that plaintiff cannot establish a prima facie case of discriminatory discharge.  Plaintiff submits that this issue has also been discussed.  She is a member of a protected class.  She was qualified for her job according to Lucy White and her job performance was satisfactory.  See the testimony and Lucy white.  She was fired.  The circumstantial evidence as to how the defendant failed to follow its disciplinary procedures with another employee, despite the fact that she is African-American, when compared with the other circumstantial evidence of racial discrimination and retaliation against her because of her race. This evidence plaintiff submits establishes a, facie case of discriminatory discharge.

Then the defendant claims that plaintiff cannot establish a prima facie case of retaliatory discharge.

The court should consider plaintiff's discussion of these issues above.  Defendant argued that plaintiff did not engage in protected activity.  Plaintiff has discussed this issue and showed that she engaged in protected activity by complaining to management of racial discrimination, and, she was discharge shortly thereafter.    Lucy White testified that plaintiff when she had conducted her last interview was satisfying the requirements of her job.  It was only after Plaintiff was transferred to the supervision of Tim Shetterly. Moreover, plaintiff has shown that another employee who allegedly violated the same rules as plaintiff was not

terminate, but instead given better treatment by the defendant by not following its disciplinary procedure as compared to plaintiff.  These clearly raise the issue of whether plaintiff was retaliated against and terminated because she spoke up for her civil rights.

Plaintiff's evidence shows demonstrate pretext for discrimination.

It argues that it has a legitimate non-discriminatory reason for its adverse employment actions.

As to the disciplined for patient complaints, the court should note that the plaintiff was singled out for a patient satisfaction survey.  There were at least 45 other registrars who were not subjected to stand treatment. White deposition.

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Summary judgment should not be granted on the plaintiff's claim for intentional infliction of emotional distress.

The defendant is liable to the plaintiff for the tort of intentional infliction of emotional distress because the evidence shows the following:

The defendant's conduct was outrageous, intentional and reckless.  The evidence in this case shows that the defendant was well aware that the plaintiff was scheduled for surgery on her breast to determine if she had cancer. When plaintiff went to human resources, the human resources person Darlene Lawyer, she was told her that the defendant intended to terminate her but did not want her to go into surgery with that on her mind.  While the defendant denies that they made such statement, it is plaintiff's testimony that such statement was made.  This creates a dispute fact has to whether or not such statement was intentional or reckless.

Whether this conduct was intentional, or reckless and outrageous is an issue for the jury.

Thus on this issue, the court cannot grant summary judgment.  Where an employer is aware of an employee's condition, but nevertheless  subject  that employee to intentional and emotional distress, plaintiff's burden is lighter. Kentucky Fried Chicken National Management Company Vs. Weathersbee, 326 Md.  663, 607 A2d 8 (1992); 804 F. Sup 756 (District Court of Maryland 1992)

Defendant was well aware that plaintiff was scheduled for surgery on her breast, and, she could possibly have cancer.  With this knowledge, and the fact that plaintiff would be out of work for a significant period of time defendant knowingly created a situation where plaintiff was aware that she might lose her job, had cancer, would be without insurance and therefore would suffer economically, emotionally and financially. See Kentucky Fried Chicken National Management Company Vs. Weathersbee, supra.

Plaintiff submits that this conduct was extreme and outrageous in view of the defendant's knowledge of her emotional and physical condition.

The third element of this cause of action is that the conduct caused emotional distress to the plaintiff.  Plaintiff was required to seek help from a doctor who placed her own Zoloft for major depression.  Plaintiff also sought help from the employee assistance program, and, that report is attached.  In that report, it indicates that plaintiff was suffering from a lack of sleep, depression, and other emotional issues.  See attachment A where Plaintiff sought counseling from Prime, Employee Assistance Program, Inc. See attachment A. See also Dr. Anita Khandelwal's testimony at, pages 1-9, and 29- 39. Plaintiff was suffering from severe

depression such that it affected her daily life.

The fourth element is that the emotional distress was severe.  Plaintiff suffered major depression and was treated by a doctor who gave her Zoloft, and, recommended that she be treated by a psychiatrist.  Because plaintiff had been terminated from her employment, she had no health insurance and was unable to obtain the treatment from the psychiatrist. This evidence shows that plaintiff's emotional distress was severe and satisfies the fourth element.

Defendant has attempted to limit the court's view of the conduct to the acts of Tim Shetterly.  Plaintiff does not focus only on his acts. Defendant was well aware of plaintiff's emotional and physical condition and yet and told her just before she went into surgery that they had intended to fire her. Furthermore, just prior to her surgery, the defendant suspended plaintiff  from  her employment.

A  number of courts have recognized the employer-employee relationship as a significant factor in determining " outrageousness." Worley v. Wyoming Bottling Company, 1 P.2d 3d at 629 (citing Kentucky Fried Chicken National Management Company v. Weathersby, 326 Md.  663 , 607 A.2d 8, 15 (Md. 1992) ("It is only natural that a defendant's position of power over a plaintiff may enhance his or her ability to do harm." Id. Restatement, supra, § 46 cmt e recognized this reality: BORCHERS v. HYRCHUK, 126 Md. App. 10, 11 (1999); Wholey v. Sears Roebuck,  370 Md. 38 (2002)

The "tort of intentional infliction of emotional distress is rarely viable, and is `to be used sparingly . . .'" Bagwell v. Peninsula Regional Medical Center, 106 Md. App. 470, 514 (1995) (quoting Kentucky Fried Chicken National Management Co. v. Weathersby, 326 Md. 663, 670 (1992)). That said, we also note the long-standing principle that "the extreme and outrageous

character of the defendant's conduct may arise from his abuse of a position, or relation with

another person which gives him actual or apparent auththority." Bagwell, supra at 514. LOYA

v. WY. PART., JACKSON HOLE, INC., 2001 WY 124 (2001)

Plaintiff submits that all of the elements of intentional infliction of emotional distress are present
and the evidence supports the same, and, the motion should not have been granted, Wyoming
Case Law

## CONCLUSION

Accordingly, defendant's motion for summary judgment should be denied on the

grounds discussed in this Memorandum and the exhibits attached..

Respectfully Submitted

_____/NCR/_____
Norris C. Ramsey
Norris C. Ramsey, P.A.
2122 Maryland Ave.
Baltimore, Maryland 21218
410-752-1646
Trial bar No. 01453

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this Plaintiff's Motion for Reconsideration of
Court's Order Granting Defendants Motion for Summary Judgment, Answer to
Motion for Summary Judgment, Exhibits and Memorandum In Support of
Plaintiff's Answer to Defendant's Motion for Summary judgment and was
electronically served on Fiona Ong Esq. on September 18, 2003.

_____/NCR/_____

Norris C. Ramsey